IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,   )  | CR 05-2323-TUC-CKJ |
| Plaintiff,   ) | **ORDER** |
| vs.   ) |  |
| Joseph A. Norris,   ) |  |
| Defendant.   ) |  |

Pending before the Court are Defendant's Motion to Suppress Illegal Stop/Illegal Seizure and Motion to Suppress Statements and Evidence. For the reasons stated below, the Motions to Suppress are denied.

**I. BACKGROUND**

On the night of July 16, 2005, Tohono O'odham Police Department ("TOPD") officers Matt Hall and Richard Johnson arrived at Defendant's residence in Sells, Arizona. The officers were following up on a shooting that occurred on July 15, 2005; the shooting involved rival gangs (i.e., the East Side Crips and the Red Pride Gangsters). The residence in question was located in an area of Sells known by TOPD officers to be a high crime area for gang, drug, and weapons activity. TOPD officers knew that Defendant was a member of the Red Pride Gangster ("RPG") street gang in Sells. Directly across the street from Defendant's residence was another residence occupied by members of the East Side Crips.

Both officers had numerous contacts with Defendant prior to this date due to calls and

complaints about criminal activities at the residence. Defendant had always been cooperative in the past. When the officers arrived at the residence that night, there were several other individuals both inside and outside the residence associated with the RPG gang. As officers approached Defendant while he was asleep on top of a vehicle in the yard, they saw a magazine for a .22 caliber rifle lying next to his hand. The officers then woke up Defendant and conducted a *Terry* frisk and found a round of ammunition in his pocket.

While at the vehicle, officers asked if they could search Defendant's house, and Defendant granted them permission.[1] At the time he granted them permission to search the residence, Defendant was not leaning against the police cruiser, he was not in handcuffs, and was not constrained in any other manner. Only after granting them permission to search the house, officers placed Defendant in handcuffs in the back of the police cruiser for officer safety reasons. During the time Defendant was placed in handcuffs in the police cruiser, he was not asked any questions. While the officers searched the house, Defendant escaped from the police cruiser. Officers later apprehended and placed Defendant into custody on July 30, 2005.

Upon searching the house, Officer Hall located a Remington .22 caliber rifle with a sawed-off stock underneath Defendant's mattress; as Officer Hall believed that the rifle was illegally modified, he seized the weapon. After seizing the rifle, a TOPD officer examined the rifle at the TOPD station several hours later and discovered that the serial number had been altered.

TOPD officers subsequently turned over the gun over to Alcohol, Tobacco, and Firearms ("ATF") agents for processing. Upon examination, ATF agents determined that measuring from the firing pin of the rifle, the barrel was greater than 16 inches and the overall length

---

[1] This is the only statement (the grant of permission to search the house) that Defendant claims was in violation of *Miranda*. All of the other statements made by Defendant on July 30, 2005 regarding the possession of the gun, hiding the gun under the bed, and scratching out the serial number, were made after he was given his *Miranda* warnings.

- 2 -

of the barrel was greater than 26 inches thereby making the weapon legal in length despite the sawed-off stock.

Defendant seeks to suppress evidence in this case on the following grounds: (1) the TOPD's initial contact with him while he was sleeping on the top of his car was without reasonable suspicion; (2) his statements (i.e., consent) to police allowing them to search his residence were made in violation of *Miranda*; (3) the TOPD's seizure of the rifle was without probable cause and without a warrant.

## II. DISCUSSION

### A. Reasonable Suspicion

"Beginning with *Terry v. Ohio*, 392 U. S. 1 (1968), the [Supreme] Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Nevada*, 124 S. Ct. 2451, 2458 (2004)(citations omitted). "Generally, '[a] *Terry* stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons.'" *United States v. Miles,* 247 F.3d 1009, 1012–13 (9th Cir. 2001). For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989)(internal quotes and citation omitted); *see also United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000) ("The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence, and less than probable cause.")(citation omitted).

Whether there was reasonable suspicion for the stop must be evaluated by looking at the totality of the circumstances. *United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990). Founded suspicion "is not a matter of hard certainties, but of probabilities." *United States v. Mattarolo,* 209 F.3d 1153, 1157 (9th Cir. 2000). The collective knowledge of all the officers involved must be considered when evaluating these circumstances. *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996). The officer's training and experience are factors to consider in determining if the officer's suspicions were reasonable. *Mattarolo,* 209

1  F.3d at 1157 (citing *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)). What
2  may seem to be innocuous conduct when viewed in isolation may be appropriately
3  considered when determining if reasonable suspicion exists under the totality of the
4  circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to
5  factors which may have an innocent explanation. *United States v. Arvizu*, 534 U.S. 266, 273-
6  275 (2002).

7  An officer who possesses "a reasonable articulable suspicion that [a suspect poses] a threat
8  to his safety or the safety of others, [may] detain [the suspect] to conduct an investigatory,
9  'pat down' frisk . . . ." *United States v. Terry-Crespo*, 356 F.3d 1170, 1173 (9th Cir.
10 2004)(citations omitted). Under the "plain feel" exception to the warrant requirement, an
11 officer may seize contraband during a valid frisk if the officer's sense of touch makes it
12 immediately apparent that the item is contraband. *Minnesota v. Dickerson*, 508 U.S. 366,
13 375–76 (1993).

14 The officers had reasonable suspicion in this case to conduct a pat down frisk of the
15 Defendant. Due to a report of a shooting involving rival gang members the previous day,
16 officers followed up on the shooting by going to Defendant's residence. The officers knew
17 that this area of town was a high crime area for gang, drug, and weapons activity. Further,
18 the officers knew that Defendant was a member of the RPG gang, members of the rival East
19 Side Crips gang lived across the street, it was nighttime when they approached Defendant,
20 and there were other known members of the RPG residence in the vicinity at the time. As
21 officers approached Defendant, who was sleeping on top of a vehicle, they saw a rifle
22 magazine next to his hand. In light of the totality these circumstances, the officers
23 reasonably believed that criminal activity was afoot, and therefore conducted a valid *Terry*
24 pat and frisk which revealed a single round of ammunition in Defendant's front pant's pocket.

25 **B. Consent to Search and *Miranda***

26 Defendant argues that his consent to search the house was in violation of *Miranda* as he
27 was in custody and being interrogated for purposes of *Miranda*. As such, because the
28 officers did not read him his *Miranda* rights, Defendant argues that the statement allowing

1 them to search his house which subsequently led to the seizure of the rifle in question must
2 be excluded.  In response, the Government argues that Defendant was not in custody such
3 that *Miranda* warnings were not required, and Defendant voluntarily consented to the search
4 of his house.

5 "[A] search conducted pursuant to a valid consent is constitutionally permissible."
6 *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).  "The Fourth Amendment test for a
7 valid consent is that the consent be voluntary."  *Ohio v. Robinette*, 519 U.S. 33, 40
8 (1996)(citation omitted).  To determine if a consent is voluntary, the Court looks at the
9 totality of the circumstances.  *See United States v. Mendenhall*, 446 U.S. 544, 557 (1980).
10 The government has the burden to show by a preponderance of the evidence that the consent
11 was voluntary.  *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973)(citation omitted).
12 The scope of the search consented to is based on objective reasonableness, *i.e.*, what a typical
13 reasonable person would understand is being consented to by the citizen.  *Florida v. Jimeno*,
14 500 U.S. 248, 251–52 (1991).  Among the factors that may be considered in determining
15 whether a consent was voluntary, are whether the person was in custody, whether officers'
16 guns were drawn, or whether there were other displays of force or coercion.  *See United*
17 *States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997); *Ohio v. Robinette*, 519 U.S. at
18 39-40.[2]

19 In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held "that a person
20 questioned by law enforcement officers after being 'taken into custody or otherwise deprived
21 of his freedom of action in any significant way' must first 'be warned that he has a right to
22 remain silent, that any statement he does make may be used as evidence against him, and that
23 he has a right to the presence of an attorney, either retained or appointed.'"  *Stansbury v.*
24 *California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444). "An officer's
25 obligation to administer *Miranda* warnings attaches . . . 'only where there has been such a

---

27
28 [2]At the hearing, Defendant agreed that the consent was voluntary, but maintained that the consent was in violation of *Miranda* as Defendant was in custody.

1  restriction on a person's freedom as to render him "in custody."'" *Stansbury*, 511 U.S. at 322
2  (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). "Custodial" means taken into
3  custody or otherwise deprived of freedom of action in a significant way. *Miranda v. Arizona*,
4  384 U.S. 436, 444 (1966) ("By custodial interrogation, we mean questioning initiated by law
5  enforcement officers after a person has been taken into custody or deprived of his freedom
6  of action in any significant way.").

7  To determine whether a person is "in custody" under *Miranda*, "a court must examine all
8  of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply
9  whether there [was] a "formal arrest or restraint on freedom of movement" of the degree
10 associated with a formal arrest.'" *Stansbury,* 511 U.S.at 322 (citation omitted). "'[T]he only
11 relevant inquiry is how a reasonable man in the suspect's position would have understood
12 his situation.'" *Stansbury*, 511 U.S. at 324 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442
13 (1984)); *see also Crawford*, 372 F.3d at 1059–60 ("Whether a suspect is in custody turns on
14 whether there is a '"formal arrest or restraint on freedom of movement" of the degree
15 associated with a formal arrest.'")(citations omitted); *United States v. Kim,* 292 F.3d 969, 973
16 (9th Cir. 2002)(reasonableness evaluated by objective view of circumstances as opposed to
17 subjective view of officers or suspect); *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th
18 Cir. 1985) ("A defendant is in custody when, based upon a review of all the pertinent facts,
19 'a reasonable innocent person in such circumstances would conclude after brief questioning
20 he or she would not be free to leave.'")(citation omitted). "The following factors are among
21 those most likely to be relevant to deciding [whether a reasonable person would believe that
22 he was not free to leave]: (1) the language used to summon the individual; (2) the extent to
23 which the defendant is confronted with evidence of guilt;(3) the physical surroundings of the
24 interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to
25 detain the individual." *Kim*, 292 F.3d at 974 (quoting *United States v. Hayden,* 260 F.3d
26 1062, 1066 (9th Cir. 2001), cert. denied, 122 S. Ct. 1117 (2002)).

27 The Court finds that Defendant was not in custody at the time he consented to the search
28 and such consent was voluntary. After the officers found the .22 caliber rifle magazine next

to the sleeping Defendant, and conducted the initial *Terry* frisk which revealed a round of ammunition, the officers simply asked Defendant if the gun the ammunition belonged to was in the house. At that moment, Defendant was simply standing in front of the vehicle he was sleeping on at the back of his house. The two investigating officers did not have their guns drawn, Defendant was not handcuffed, Defendant was not placed in or against the squad car, and there was no form of coercion or other restraint imposed on Defendant. In response to the question, Defendant responded: "no, you can go ahead and check, it isn't in there." The officer then asked if he was giving them permission to search the house for the gun, and Defendant then stated: "yeah, it's not in there." In light of the foregoing facts and authority, Defendant was not in custody and voluntarily consented to the search of the residence. As such, the consent was valid and the subsequent search of the house which uncovered the gun in question was also valid.

**C. No Probable Cause or Warrant to Seize the Gun**

Lastly, Defendant argues that even if the consent and subsequent search of the residence was valid, the officers did not have probable cause to seize the gun. Defendant argues, and the Government concedes, that the sawed-off rifle was later determined to be of a legal length when it was processed by ATF agents. Defendant argues, and the Government also concedes, that the altered serial number was not actually discovered contemporaneous with the discovery of the rifle in the house. Rather, the altered serial numbers were only discovered hours later at the TOPD station. Thus, Defendant argues the gun must be excluded from evidence.

Defendant correctly cites the general rule that ordinarily, a seizure of personal property is pe se unreasonable unless the seizure is supported by a judicial warrant that was issued upon probable cause specifically describing the items to be seized. *See U.S. v. Place*, 462 U.S. 696, 701 (1983). However, Defendant also recognizes that assuming the consent and subsequent search of the house was valid, the officers had the right to seize the rifle if upon seeing the rifle, the officers recognized that it was illegal in itself or otherwise evidence of a crime. "Evidence may be seized without a warrant . . . when it is within 'plain view.'"

*United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir.), *cert. denied*, 531 U.S. 856 (2000). The plain view doctrine is an exception to the general rule that warrantless searches and seizures are presumptively unreasonable. *Horton v. California*, 496 U.S. 128, 133 (1990). Plain view can be the basis for a warrantless seizure if the property seized was observed: (a) from a vantage point where the viewing officer had the lawful right to be; and (b) the evidentiary value of the item was immediately apparent. *Id.* at 136–37; *see also Garcia*, 205 F.3d at 1187 ("The 'plain view' exception requires:  (1) that the initial intrusion must be lawful; and (2) that the incriminatory nature of the evidence must be immediately apparent to the officer.")(citation omitted).  Here, as the Court has already found, the rifle was discovered during a lawful search of the house pursuant to Norris' voluntary and valid consent. Once the rifle was discovered, Officer Hall recognized that the stock of the gun had been sawed-off; in light of federal statutes criminalizing the making, transportation, possession, and failure to register modified weapons, Officer Hall had probable cause to seize the rifle in question as the evidentiary value of the rifle was immediately apparent. *See, e.g.*, 18 U.S.C. §§921(a)(8), 922(a)(4); 26 U.S.C. §§5822, 5841, 5845(a) and (i), and 5861; *Maryland v. Pringle*, 540 U.S. 366, 370-371 (2003)(probable cause requires a reasonable belief of guilt; this is evaluated in light of the totality of the circumstances and everyday experience).  Although it was subsequently discovered that the length of the barrel and overall length of the rifle fell within legal bounds by a few inches[3], this does not obviate the fact that Officer Hall previously had probable cause to seize the gun at the time of the search. *See Pringle*, 540 U.S. at 371 (officers are not required to have proof beyond a reasonable

---

[3]The applicable law applies to modified rifles whereby the barrel is less than 16 inches in length, or the overall length of the rifle is less than 26 inches. *See* 18 U.S.C. §§921(a)(8); 26 U.S.C. §5845(a).  As the barrel of the rifle in question was 18 inches and the overall length was 30 inches, the rifle was legal despite the post-manufacturing modification.  As indicated during the suppression hearing, Tohono O'ohdam law does not prohibit such modified rifles; as such, subsequent to seizing the rifle, TOPD officers referred the rifle to ATF agents to determine if the modified rifle violated federal law.

- 8 -

1  doubt or a preponderance of evidence of a criminal violation in order to make a probable
2  cause seizure).  Therefore, the seizure of the gun was valid.
3  **III. <u>CONCLUSION</u>**
4     Accordingly, IT IS HEREBY ORDERED as follows:
5  (1) Defendant's Motions to Suppress are **denied**.

9         DATED this 9th day of March, 2006.

         _____
                Cindy K. Jorgenson
              United States District Judge